Appeal 2007-1241. Mr. Sams, good morning to you. Thank you, Your Honor. Please proceed. May it please the Court. My name is Gary Sams. On behalf of Appellate Tip Systems, we're here to contest two findings by Judge Gilmour with respect to summary judgment motions and claim constructions. For purposes of argument today, with the Court's permission, I'd like to focus on the equivalency argument and just submit the claims constructions portion of the brief. Essentially, my client, Mark Styron in Tip Systems, has two patents, the 169 and the 828, covering the development of a court-free phone. He is in the prison inmate phone business, and there was a spate of lawsuits years ago and reports of prisoners having been injured from hanging themselves on cords on the phones that they would use to call their families, call attorneys. You should assume that we're well familiar with the facts from studying the brief so that you don't need to use your valuable time to give us the background or the facts of the case. I do appreciate that, Your Honor. Thank you. Specifically, the patent, specifically 169, discusses a handset, as shown in figure 3 on page 84 of the appendix. In there, we talk about removing the handset and putting it on the inside or the interior. Let me ask you about that. You're not going to argue here. For purposes of your argument, at least, you're asking us and we're willing to accept the claim construction that the Court gave with respect to handsets. For purposes of this argument, yes. And that is, there's a handle. There's an earpiece, there's a mouthpiece, and there's a handle. So we've got a handle. So if I understand your DOE argument correctly, you're asking us to say that the corresponding structure, the equivalent structure to a handle, which is one of the three structures in the claim construction, is no handle, right? That's correct. Isn't that, just based on our principles, reading out a particular claim limitation? I mean, there's no equivalent structure when you're saying the equivalent structure is no handle, right? There is no literal structure that is the same, but what we have here is a situation... So what's the equivalent structure to the handle? The equivalent is the brackets that they use on the earpiece and mouthpiece themselves, separately. Because the only function of the handle as part of the handset in this case, because the whole purpose of the invention is to keep the handset and court away from the prisoner, is to be used to show how it's bracketed. If you look at the exhibit figure 3 on page 84, you'll see that the sole purpose of it is that we use two brackets to function to keep it in place. What they do, Your Honor, and I think it is... But the problem I'm having, as this gets into your means plus function argument, which is also scattered in this, is that the structure for the means for mounting the handset seems to me to be the bracket assembly, not the handle. I think they have to be used in conjunction with one another. If you don't have the brackets, the handle is in and of itself enough to keep it there. So the bracket must be literally bracketed to something to keep it in place. Maybe I'm missing something, but the question, I think, is what is the equivalent structure in the accused device? And it clearly doesn't have a bracket. As I understood your argument, it was that there was a spacing function that was performed by the housing. That's correct. They both achieved the same purpose in substantially the same way. And that is to keep the earpiece and mouthpiece at an equal distance apart at a set place, vertically mounted, for the use so the user can speak and hear. Now, what's interesting is that... Yes, but go back to Judge Post's original question. He explained to us how there is then a structure in the accused device that is somehow equivalent to this structure that exists in your 169 patent. I think that this is similar to the Toro case, and I can't tell you specifically that there is a structure other than that there is the bracket. But as the court mentioned in Toro... There isn't a bracket in the accused device. Yes, they use a bracket to bracket the earpiece and the mouthpiece. So I'm sorry, I apologize if I wasn't clear, Your Honor. So you're saying the equivalent of the handle are the two brackets, one that holds the earpiece and one that holds the mouthpiece? That's correct. Now, where are we to see that? If you would look please at 1766 in the appendix. If you look specifically, this is the CF on one of the accused infringers. You see the earpiece at the top and the mouthpiece lower. And you see the screw. I apologize for the quality of the photo. You see the screw at the bottom, and then on the other side, there's a screw. There's a small plate that runs at the base of the receivers that mount and screw it in and act as the bracket. The fact that they're screwed in is somehow an equivalency. Yes, it's very important. Otherwise, because it's the whole bracketing concept of keeping them in the set place, that is needed. So then take us the next step and explain to us how that doesn't then invalidate your second patent. How that doesn't invalidate our second patent? Yes, because if in fact that is an equivalency, doesn't it follow then that your second patent wasn't necessary and isn't valid? We believe under the law, and especially of equivalency, that the second patent wasn't needed. My client at the time was advised by counsel to take a belt and suspenders approach. And just to be sure and make sure, if there wasn't literal infringement, to do a continuation in part. And he did so upon advice of his counsel. So you're essentially disclaiming the second patent? I'm not disclaiming the second patent. I'm saying that everything in the second patent, I feel, in my interpretation, is covered by the first, Your Honor. Let me just wrap up the DOE discussion we've been having on the handset. So your position is that the equivalent, the patented device, has a handle, an earpiece, and a mouthpiece. And there's also a bracket assembly in the patented device. So you're saying there are those four pieces in the patented device. And you're saying the equivalent to that are three of those four. The earpiece, the mouthpiece, and the bracketed assembly. That's correct. And I was starting to mention that earlier. And so I guess my question is back to my very first question, which is if one of the specific limitations in the patent includes a handle, what is the equivalent to the handle? And your answer is the lack of a handle. Correct. Right? Assume you have a claim with elements A, B, C, and D. If the accused infringing products has elements A, B, and C, but B and C serve to do the same function as D in the patent, that's infringing. And I think that's exactly what we have here. Specifically, the gentleman who actually was the engineer that copied our phone and then built it on page 1461, in his deposition he was asked this question. What was the purpose of your brackets by myself? Answer, the bracket would hold the handset in place, which would keep the microphone, because the microphone and transmitter, I'm sorry, the transmitter and receiver were encapsulated in the handset. Then that bracket held the handset in place. In our ultimate desire, we eliminated the whole handle handset, and the transmitter and receiver were encapsulated with the metal machine piece that I described. So I said, in essence, the metal machine piece and the bracket were to serve the same purpose, to keep the mouthpiece and the earpiece secure. Correct? Since the bracketed version was that if those two components were an integral part of the handset, then in effect it was holding the components in the same way. That's his answer. He's essentially answering your question, I hope, or I think he is, by admitting that the way they did it was the same in his view. And your case for if there are three elements in a claim, and the equivalent only has two of the three, but those two can perform the function of the third, is that your case for saying that that's an okay equivalent? I would refer to Daly and Turo, both, and the cases cited therein. Specifically, there's a quote from Turo that states, an accused device could conceivably lack an insignificant function of a single claim limitation and still be only insubstantially different than the claimed invention. And that's what we have here. When the claimed invention is to remove the whole handset, or the handle, away from the prisoner, then a handle is not an important aspect in the scope of it. But the problem is that the claim drafter made it important by expressly listing it as a limitation, and you, I think, are asking us to ignore that. I'm not asking this court to ignore it whatsoever. I'm asking this court to decide that by copying something and essentially cutting out an inconsequential element does not create the whole responsibility. There's a lot of case laws saying that anything expressly claimed as a limitation is not inconsequential, that by being included, it is made consequential. We have cases that say every limitation is meaningful. No limitation can be ignored. But you're asking us to ignore a limitation under a generalized notion of equivalency of function. If it is only insubstantially different. And that's what we have here. The purpose of the handle is to be used to bracket it on, as shown in figure three. There is no other purpose of the handle other than to set the distance apart between the earphone or the mouthpiece and the earpiece. As a consequence, you have a situation where they are doing the same thing, only they just lack the ten inches. That is, they're using the same measurements, the same distance. And incidentally, on the accused product, the earphone and mouthpiece are directly where, if you literally would take a handset and set it there, they're in that exact same location. So I understand what the court is saying, and I don't dismiss it, Your Honor. It is problematic. But I think that a weak attempt at a design around one copying something that was under a field test agreement and then is knowingly copied should not be rewarded by, as I said, trying to attempt to remove an insignificant function or limitation. And what's your legal authority for saying why we should ignore the prosecution history of the second patent? Are you speaking with respect to the extend through portion, Your Honor? No, just on the handset piece where your client was looking for the second patent. Originally, the term handset was in the draft, and then it was taken out as a way of distinguishing the two patents. I apologize. I understand what you're saying. How do I say that we are not stopped based on that? Essentially, again, that's a decision that was made by earlier counsel for expediency purposes. What's your legal authority for saying we can ignore that prosecution history because you're now arguing it differently? It is not something that was fought, essentially. It was in an action letter of recommendation and rejected, and we just chose not to attempt to cure it to their satisfaction. I don't think we are stopped by that action. And you're going to cite me some authority? I cannot, as I stand before you right now, Your Honor. Okay, so then on the factual question of whether or not eliminating the handle was insubstantial, what's the evidence that you can point me to in the record that would demonstrate that it's insubstantial? That it's insubstantial, excuse me. In addition to Mr. Rainer's testimony, if Your Honor would look briefly at page 591 and 595, please. That is the actual product information sheet used by I'm sorry, if I could, I'd like to first turn you to page 836. This is in the record. This is the folks that copied our phone. This is their information sheet that they put out to those in the industry. 836? 836. I think it's the first page of the second volume, Your Honor. And if you look in the right-hand column approximately halfway down, it's talking about the features. And the last bullet point says, sealed transmitter and receiver caps are affixed to steel plate fittings which are bracketed and welded to the housing. The handset assembly is equivalent to standard coin telephone handsets. The people that copied this, and we're using the term of art, to those in the industry that would know what it means, described it as a handset intercalling to the phone, and that's what they do in their other information sheets on 591, 565, and 595. There are numerous references to an integral handset, and that's how they refer to it even without the handle. Essentially, they come to the conclusion, and they represent to the marketplace that this is an issue where you don't need the handle. We call it a handset with an earpiece and mouthpiece because the handle was used for bracketing and it was inconsequential. All right. We'll hear from the other side, and we'll restore the five minutes you sought to reserve for rebuttal. Thank you, Your Honor. I appreciate it. Mr. Schneider. Good morning, Your Honor. Good morning. May it please the Court. My name is John Schneider. I'm representing independent technologists in this appeal. I represent a co-counsel here who's hidden and has forever come. He'll be addressing the issues related to the cross-appeal in this case, and I'll be addressing the point of destruction and Dr. McGovern's arguments. I'd like to follow up on several things that Mr. Samuels has talked about in the Court this morning, and I'd like to pick up the point that Judge Cogeman made with respect to the prosecution of the case. TIPS did distinguish the invention of the 969 from that of the 828 patent by saying basically that the handset is different than a separate earpiece and mouthpiece. This is found in two places. One is where they made a description of the different inventions in the prosecution of the 828 case, and I'm afraid pages 377 through 78 of the appendix were TIPS in it. The present application, which is the application that had a separate earpiece and mouthpiece, varies from the parent application, the 169 patent that had the handle, primarily in the structure of the earpiece and mouthpiece. In the parent application, the earpiece and mouthpiece were integral into a telephone handset, which TIPS has defined in the claims, as Judge Michel pointed out, as a handle with an earpiece and a mouthpiece. In the 828 present application, the earpiece and mouthpiece are not integrated into a single handset, so they had separate pieces. They did this in conjunction with discussing the differences in connection with an obviousness-type double patent rejection. If, in fact, an earpiece and mouthpiece were the same or the equivalent of a handset, we believe that the examiner would have issued a statutory-type double patent because, in effect, they were claiming the same invention. But, instead, the earpiece and mouthpiece were just an obvious variation of that that allowed TIPS to get the second patent. But if, as Judge Pogue has mentioned, it embraces that concept of separate earpiece and mouthpiece, then I think the 828 patent would be invalid for violation of the statutory double patent. But perhaps even more telling is the examiner's rejection in the first office action for the 828 application. TIPS, when it filed the application, carried over the word handset for some of the pending claims, even though the specification only spoke about separate earpiece and mouthpiece. The examiner rejected those claims as indefinite under Section 112, First Paragraph, finding that the word handset was not supported in the specification of the disclosure. TIPS acquiesced to this rejection and amended the claims to remove the word handset. If they had believed what Mr. Savage is arguing now, that the earpiece and mouthpiece were the same and supported a description of a handset, they could have simply argued that to the examiner that there was an inherent disclosure of a handset in the specification. But they never made that argument. They accepted the examiner's opinion and went with it. I think it's quite telling that this is a clear indication that a separate earpiece and mouthpiece are not the same as the handset. One of the things that's also lacking in TIPS' proof on these matters is that their export declaration that was submitted in this case, first of all, is very conclusive. It talks about simply functioning, but it never applies the function-weight result test that this Court has promulgated. It talks generally about the wall being a wall in the brackets, holding the two earpiece and mouthpiece at a fixed distance apart, but it never explains how that does it in substantially the same way as handling, which permanently fixes an earpiece and mouthpiece at a set distance, so that no matter where I take that handle, that earpiece and mouthpiece are always at the same distance. But if I take the earpiece and mouthpiece out of the box, and they're no longer bolted in there, I can put them at any distance, I can put them in any arrangement. So they're obviously working in a different way. They're accomplishing that function, but in a different way. And you're talking about the accused device now here? The accused device does this through a bracket assembly? That's correct. And so we do hold them, as long as they're within the phone, yes, they're a fixed distance apart. But if I take them out of the phone, they can be put anywhere, because they're not permanently fixed at that distance to release that handle or some structure that's the equivalent of a handle. So there's clearly nothing there that does the same job, function the same way as a handle. Their expert only gives a conclusory statement that in fact they do. What about the housing to which the brackets are affixed? Why does the housing not serve, the wall of the housing not serve the same function as the handle part of a normal telephone? It does, it may in fact do that, Your Honor, but it doesn't do it the same way, in that it's not a permanent connection between the two. Once I take it out of that housing, I can separate the earpiece and mouthpiece from the housing. I can put them anywhere. I cannot separate the earpiece from the mouthpiece unless I destroy the handset. And that's different than just being able to simply remove and change them around. The earpiece and mouthpiece are designed to be able to be interchanged for maintenance purposes and for other reasons, so they can be readily taken out and moved around and everything else. They're not permanently attached or fixed to each other. Well, I don't quite follow that. They're fastened to a surface. I guess a metal surface. That's right, but they can be, as Mr. Sands pointed out, they're just bolted, they're screwed there. So I can take them out and I can move them. And a handset, I can't do anything with that, those earpiece and mouthpiece, and change the distance in any way without destroying the handset. There may be a difference that you would have to do violence to the handset to be able to relocate the two pieces, but I'm still not following why you think that the wall of the housing to which these brackets are affixed doesn't perform the same function of keeping them at a fixed distance apart from one another and in the same plane that the handle does. We accept that, Your Honor, but I don't believe they perform that function substantially the same way. And TIPS has offered our evidence to show that they do so in a substantially the same way. And it's their burden in this case to make that showing. The test is a three-part test. So even if the function is the same, generally... Of course it's a three-part test, but it seems to me that it's obvious that it does it in the same way. It's an inelastic surface, a piece of sheet metal, to which two objects are attached in such a way that the distance between them is fixed and constant. Your Honor, I can take the earpiece and mouthpiece out without having to destroy the wall of the surface. So it's not permanent. It doesn't draw a direct connection between the two of them so that they can never be separated apart without having to destroy that. I submit that that is a significant difference. So do you have a different definition of the function of the handset than Mr. Sands? I'm sorry, Your Honor. Do you have a different definition of the function of the handset than Mr. Sands? He says the handset's only there for spacing purposes. Well, in the 169 patent, it serves two purposes. One is the spacing apart, but also is that the means for permanently attaching requires the presence of a handset, because the bracket grasps the handset to hold it into the foam. And that's important, because if you were to, as suggested before, just have that same bracket assembly, you holding it in, and you just cut the pieces apart, the two could move and might rotate and actually fall in or out of the foam. The brackets that we use are very different than just using the U-shaped bracket that's described in the 169 patent. It's a circular device that actually holds the whole piece in place and screws into the cap so that it does hold it into the wall. The U-shaped bracket, if I were to use that to try to hold it, the earpiece and mouthpiece could slide and just fall out or fall. Can I ask you one quick question before your time runs out? Sure. And that's going back to your earlier point. You're here arguing and defending the no-equivalence determination. That's right. And it strikes me that most of your argument here, and the one you led with, was the prosecution history of the 828. Can I just... I mean, I'm a little... Even if you're right, I mean, even if we accept everything and we agree with you entirely on the 828 and the consequences of that prosecution history, doesn't that exclusively lead us to perhaps invalidating the 828 down the road? So I get that, but I'm not clear on why that prosecution history ought to inform our DOE analysis on the 169. Well, I believe it does, Your Honor, for the simple fact that they are closely related, and I go back to the Microsoft case on that. So is the prosecution of the 828 part of the intrinsic record of the prosecution history of the 169? I would say it is, Your Honor. I think the Microsoft case supports that conclusion. All right. Thank you.  Mr. Pittman. May it please the Court. I just want to follow up on a point regarding the handset before I get to some of the cross-appeal items. The claims of the 169 patent are very clear. It says that the handset is a handle with an earpiece on one end and a mouthpiece on the other end. Mr. Sams described the bracket mounts and he described the housing. He didn't say that the housing is a separate structural element in the patents. It's not part of the handset. It wasn't meant to be part of the handset. The 169 patent has a handset, has a handle, earpiece on one end, mouthpiece on the other. They're mounted by brackets, separate brackets from the handset. Mr. Sams also relied on the Toro case, but what he didn't tell the Court is that in the Toro case, it involved functional limitation. It didn't involve a structural limitation. What we're talking about here is the structure of a handset. A handset, again, with an earpiece and a mouthpiece on separate ends. So there's no proper analysis with the Toro case. He also relied on something that a competitor may have described in a publication. Well, what that issue is, the Court is aware, is what the patentee described in the patent. They had an option if they wanted to leave out the handle with an earpiece on one end, mouthpiece on the other, they could have left that out, and they chose not to do so. Regarding the invalidity issues, should the Court reach those issues, we just believe that there are other facts in the record in which the trial court could have concluded that the patent was also invalid. Yeah, but let me ask you about it. Firstly, it's clearly a conditional cross-appeal, right? Absolutely. So if we were to affirm the judgment below, then this cross-appeal goes away. But then, assuming we don't do that, I mean, are you suggesting that we decide and resolve these validity issues here with, I mean, the district court judge never reached the validity questions, right? Absolutely. So are you suggesting that we resolve them here rather than simply remanding it for the judge to deal with those issues in the first instance? That's absolutely what we're requesting. As the Court is aware, the Court has the option. When the facts are so clear in the record that only one conclusion could have been reached, this Court has the ability to do that. And we're saying, at least for a few of these issues, the record is so clear, and there was no contrary evidence. For instance, on the on-sale bar, the district court erred in denying the summary judgment on that part. The facts in the record, at least are facts that came directly from the inventor, said that he installed a phone in April of 1997 at the Hitchcock City Jail that disclosed the claimed invention in the 828 patent. That's in the record at 1470 and 1471. The 828 patent application wasn't filed until 2000. Mr. Styron, the inventor, also testified that they received revenue from this phone that was installed in the Hitchcock County Jail of $1,200. There's absolutely no evidence whatsoever that it was experimental in any way. The only evidence is that that phone that's disclaimed in the 828 patent was installed in 1997. He earned revenue from that phone. This is all admitted by Mr. Styron. So there's no contrary evidence that it was installed in 1997, revenue received in April of 1997, and the patent application was retained. So, excuse me a minute. Just remind me, we have a lot of cases over the period of a week. In this instance, did the district court deny summary judgment on the validity issues, or did she just leave them aside because she granted summary judgment on the infringement? The latter. She found it unnecessary, so she didn't deny it. So she didn't conclude that there was a factual dispute. Absolutely. So certainly, again, on the on-sale bar, the other items, and we've all briefed the other items on the anticipation of obviousness. There's a phone, and both sides acknowledge that the phone existed in 1996, it was offered for sale. It's in the record on page 1455-57. It's a Seco Model 501FS phone. It was offered for sale prior to the time of the filing of the 169 patent. Again, there's no contrary evidence that this phone didn't do the things that TIPS is now saying their patent does. TIPS's only contention is that it was a speaker phone, but again, they're saying that the phone that doesn't extend throughout the wall is still a phone that's covered by their patent. That embodiment would be covered by their patent. Well, that's what the Seco Model 501 does.  I absolutely do, Your Honor. I'll save the other minute and 20 seconds. Very well. Thank you, sir. Mr. Sam. Thank you, Your Honor. Very briefly, and I appreciate the court's indulgence. With respect to counsel's argument regarding prior public use by the inventor, I would just alert the court to page 1232 in the appendix where it is thoroughly discussed. In fact, it specifically states that the experimental April 1997 prototype had a hook switch and telephone cradle on the exterior of the housing. This proved to be ergonomically unsound and posed a safety hazard, and the user was required to position his face against telephone cradle, posing a safety hazard. You get the point. We publicly tested it, experimented it, and then came up with it, which is totally proper and appropriate. With respect to the argument on the Seco phone, counsel clearly said that it is a speaker phone. We did not patent a speaker phone. There's no language in there regarding that we claim that anybody who has a speaker phone would infringe our patent. What is important about the Seco phone and why it does not read on our patent and why does it not invalidate our patent is because it cannot also act as a regular phone. It cannot act as one so that if you were in jail and you had to call your attorney to collect, you could stand across the room and there would be no privacy. One of the big aspects, as we mentioned in our patent numerous times, is the fact that there is privacy and safety, and you can put your head right up against it and speak, and we don't have a speaker phone capability. That is just certainly a red herring, and that's why it was never seriously discussed by the examiner. The other thing, I don't want to reiterate what the court has already said in their questions, but obviously we do maintain that the combination of the bracket and the housing would constitute the handset for privacy purposes. With that, I thank you for your time. Thank you, Mr. Sams. Mr. Pittman, you have, as you observed, about a minute and 20 seconds on rebuttal on the cross-appeal. Thank you, Your Honor. I just want to read again from the record. This is the deposition testimony from Mr. Styron, the inventor. It goes to the on-sale issue. The question is, when you installed this phone at the Hitchcock City Jail, did you receive any revenue from the use of the phone? There was collect calls coming off the phone, and did you receive revenue from those collect calls? Answer, yes. And that revenue began in April 1997. Answer, yes. And then he goes on to say that he believes that the gross billable here, not collection, probably about $1,200 a month for all three phones. The question, for all three phones, would it be fair to say that the amount attributable to the phone being described in the patent was $400? He said yes. So that's his testimony. It wasn't an experimental use. It was actually used by the inmates in the Hitchcock County Jail to actually make those calls. So therefore, the on-sale invalidity argument is still in the record that that's the revenue they received to actually use that phone. So should the court reach that issue, then we believe that the patent should be invalidated for that reason. Thank you, Your Honor. Thank you. We will take the case under advisement. We thank all three counsel.